IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SANDRA K. GREEN, et al.**, | ) |
| Plaintiffs, | ) )  Civil No. **05-791-CJP** |
| vs. | ) ) |
| **DENNY'S CORPORATION,** and **DENNY'S, INC.,** d/b/a Denny's Restaurant N. 0841, | ) ) ) ) |
| Defendants. | ) |

## ORDER

**PROUD, Magistrate Judge**:

Before the court is Defendant's Motion to Reverse the Punitive Damages Verdict as a Matter of Law, or in the Alternative, Motion for Constitutional Reduction of the Punitive Damages Verdict. **(Doc. 92)**. Plaintiffs filed a response at **Doc. 105**, and defendant filed a reply at **Doc. 129.**

The jury found in favor of each plaintiff, and awarded each plaintiff actual damages of $5,000.00, and punitive damages of $35,000.00.

Defendant's first point is that there was no evidence that defendant ratified or approved the discriminatory acts of its employee, Chris Brooks. On the contrary, there was evidence that manager Theresa Huggins knew of and documented in writing incidents of racial discrimination by Brooks before plaintiffs entered Denny's restaurant on November 2, 2003. Despite Denny's so-called "zero-tolerance" policy, Brooks was not immediately counseled, suspended, disciplined, or terminated. Rather, Ms. Huggins wrote a memo to document the problem on November 1, 2003, and wrote a note in the manager's log book stating "Monica, we have to have a talk about Chris Brooks." In reply, the general manager, Monica Brendel, wrote "Yes we do!!"

1

However, no action of any kind was taken until after the events involving plaintiffs on November 2, 2003. Brooks was ultimately terminated, but the termination documents filled out by the manger did not reference Brooks' treatment of black customers. Tr., vol. 2, pp. 144 - 177 . This evidence is sufficient to support the verdict for punitive damages. Defendant's first point is denied.

In the alternative, defendant argues that the punitive damages verdicts are unconstitutionally excessive. Both parties cite **BMW of North America, Inc. v. Gore, 116 S.Ct. 1589 (1996).** The parties' memoranda were filed before the Supreme Court issued its decision in **Exxon Shipping Company v. Baker, 128 S.Ct. 2605 (2008)**. At the court's request, the parties filed additional memoranda addressing the applicability of *Exxon* at **Docs. 135 and 136.**

This court has considered the punitive damages awards in the light of *Gore* and *Exxon*, and finds additional guidance in the recent Seventh Circuit opinion of **Kunz v. DeFelice, 538 F.3d 667 (7th Cir. 2008).**

Under *Gore*, whether an award of punitive damages is so excessive as to be unconstitutional is determined with reference to three guideposts, that is, the "degree of reprehensibility" of defendants' conduct, the disparity between the harm suffered by plaintiff and the amount of punitive damages, and a comparison of the punitive damages award and any authorized civil penalties. *Gore*, **116 S. Ct. at 1598-1599.**

This court believes that the *Gore* analysis is appropriate here, and *Exxon* is of limited applicability by its own terms. Defendant is challenging the constitutionality of the punitive damages awarded in an action brought pursuant to a federal statute. In *Exxon*, the Supreme Courts stated that its "review of punitive damages today, then, considers not their intersection

2

with the Constitution, but the desirability of regulating them as a common law remedy for which responsibility lies with this Court as a source of judge-made law in the absence of statute."
**Exxon, 128 S. Ct. at 2627.**

The first guidepost is "perhaps the most important." **Gore, 116 S. Ct. at 1599.** Defendant argues that its conduct was not reprehensible because "defendant acted reasonably and timely in investigating the conduct of Chris Brooks" and Brooks was terminated "pursuant to the Zero-Tolerance policy." **Doc. 93, p. 8**. On the contrary, the evidence established that neither the manager nor the general manager moved to take timely action after Huggins became aware that Brooks "had problems" with black people, as she wrote in her memo on November 1, 2003. **See, Plaintiff's Ex. 2, copy attached to Doc. 106.** Further, the evidence does not support the contention that the termination of Brooks had anything to do with the zero-tolerance policy, as the termination document did not reference discrimination or the zero-tolerance policy at all.

The second guidepost requires the court to consider the relationship of the punitive damages to the actual damages. The Supreme Court in **Gore** expressly rejected a "simple mathematical formula" for determining reasonableness, and noted that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." **Gore, 116 S. Ct. at 1603.**

The Seventh Circuit considered the constitutionality of an award of punitive damages in **Kunz v. DeFelice, 538 F.3d 667 (7th Cir. 2008)**, which was a case brought under 42 U.S.C.

3

§1983. The Seventh Circuit rejected the contention that ***Exxon*** invalidates awards that exceed a 1-to-1 ration, explaining that ***Exxon*** reiterated that there is no simple mathematical formula, and that "heavier punitive awards have been thought to be justifiable when wrongdoing is hard to detect" or "when the value of injury and the corresponding compensatory award are small." ***Kunz*, 538 F.3d at 679, citing *Exxon*, 128 S.Ct. at 2622.** The Seventh Circuit distinguished *Exxon*, noting that *Exxon* was a maritime case under federal common law, while **Kunz** arose under 42 U.S.C. 1983. ***Kunz*, 538 F.3d at 678.** The court applied the ***Gore*** guideposts and found that punitive damages in the amount of $90,000.00 were not disproportionate to actual damages of $10,000.00, a 9-to-1 ratio. ***Kunz*, 538 F.3d at 679.**

Here, the jury awarded each plaintiff $5,000.00 in actual damages, which is a relatively modest sum. The nature of the harm suffered by plaintiffs in this case makes the monetary value of the harm difficult to assess. As in ***Kunz***, this case arises under a statute, and is not a matter of federal common law. The modest amount of actual damages supports the higher ratio. ***Gore, supra*.** See also, ***Lust v. Sealy, Inc.*, 383 F.3d 580, 590-591 (7th Cir. 2004)**, in which the Seventh Circuit recognized that a higher ratio of punitive to compensatory damages is permissible when the amount of compensatory damages is slight, as meager amounts do not accomplish the purposes of punitive damages awards.

Lastly, the court looks to any other penalties provided by law for the conduct. Defendant admits in its brief that there are no comparable civil penalties, and notes that Section 1981 does not have penalty caps. **See, Doc. 93, p. 10.** Defendant suggest that the court should consider the "analogous" caps on damages that are provided in Title VII. Of course, Congress has not enacted a cap on Section 1981 damages, so it is debatable whether the Title VII cap can be considered "analogous" at all. Even if it is considered analogous, the court notes that the Title

4

VII caps apply to "each complaining party." 42 U.S.C. §1918a(b). Defendant has maintained throughout this case, and properly so, that each plaintiff here has his or her own separate case. If the Title VII caps are analogous, they do not support defendant's argument, as each plaintiff here was awarded total damages of only $40,000.00.

This court concludes that the punitive damages awarded by the jury are not unreasonable or disproportionate, and do not offend the constitution.

For the foregoing reasons, Defendant's Motion to Reverse the Punitive Damages Verdict as a Matter of Law, or in the Alternative, Motion for Constitutional Reduction of the Punitive Damages Verdict **(Doc. 92)** is **DENIED** in all respects.

**IT IS SO ORDERED.**

**DATE: September 18, 2008.**

<u>**s/ Clifford J. Proud**</u>
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**